UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| KNOLL, INC., | Civil Action No. 12-CIV-00921 (AKH) |
| *Plaintiff,* | ECF CASE |
| v. | |
| REGENCY SEATING, INC. and JOHN SUMMERVILLE, | |
| *Defendants.* | |

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S REQUEST FOR RECONSIDERATION OF THE COURT'S RULING AT THE HEARING OF MAY 23, 2013

GOTTLIEB, RACKMAN & REISMAN, P.C.
270 Madison Avenue, 8th Floor
New York, New York 10016
(212) 684-3900 Tel.
(212) 684-3999 Fax

Counsel for Knoll Inc.

# TABLE OF CONTENTS

Table of Contents ........................................................................................................................ ii

Table of Authorities/Cases ...................................................................................................... iii, iv

Arguments

      A.    Knoll's Allegedly Fraudulent Statement was Misstated at the Hearing ................. 2

      B.    Substantially Exclusive is not Exclusive ................................................................ 5

      C.    Court Interpretation of Substantially Exclusive Supports Knoll's Claim .............. 6

            a.   Knoll Had No Legal Duty to Disclose Unauthorized or Infringing Users .. 9

      D.    Defendants Have Simply Not Made a Prima Facie Case of Fraud ....................... 12

      Conclusion .................................................................................................................. 15

TABLE OF AUTHORITIES

Page

CASES

*Alphaville Designs, Inc. v Knoll, Inc.,*
    627 F. Supp.2d 1121, 1131 (N.D. Cal. 2009) ...........................................................*13*

*Yamaha Int'l Corp. v. Hoshino Gakki Co.,*
    840 F.2d 1572, 1583 (Fed. Cir. 1988)...................................................................7

*Dial-A-Mattress Operating Corp. v. Mattress Madness, Inc.,*
    841 F Supp. 1139, 1354 (E.D.N.Y. 1994) ...........................................................9, 12

*eCash Technologies, Inc v. Guagliardo,*
    210 F.Supp.2d 1138 (C.D. Cal. 2001) ...................................................... 10

*Hana Financial, Inc. v. Hana Bank,*
    500 F.Supp.2d 1228, 1235 (C.D.Cal. 2007) ...........................................................13

*Haviland & Co. v. Johann Haviland China Corp.,*
    269 F. Supp. 928 (S.D.N.Y. 1967)...................................................................9

*International Flavors & Fragrances, Inc.,*
    183 F.3d 1361 (Fed. Cir. 1999)...................................................................7

*L.D. Kichler Co. v. Davoil, Inc.,*
    192 F.3d 1349, 1352 (Fed. Cir. 1999)...................................................................6, 13

*Quality Service Group v. LJMR Corp.,*
    831 F.Supp.2d 705, 711 (S.D.N.Y.) ...................................................................10

*Rosso & Mastracco. Inc. v. Giant Food, Inc.,*
    720 F.2d 1263, 1266 (Fed. Cir. 1983)...................................................................10

*Sovereign Military Hospitaller Order of Saint John of*
*Jerusalem of Rhodes and of Malta v. The Florida Priory of the*
*Knights Hospitallers of the Sovereign Order of Saint John of*
*Jerusalem, Knights of Malta, the Ecumenical Order,*
    702 F.3d 1279 (11th Cir. 2012) ...................................................................9

*West Fla. Seafood, Inc. v. Jet Restaurants, Inc.,*
   31 F.3d 1122, 1127 (Fed. Cir. 1994)..........................................................................................7

*Yocum v. Covington,*
   216 U.S.P.Q. 210, 216-17 (T.T.A.B. 1982).............................................................................14


Statutes

15 USC §1052..................................................................................................................2, 7


Treatises

3 McCarthy on Trademarks & Unfair Competition, § 31:75.........................................................11


Other Authorities

Trademark Manual of Examining Procedure (TMEP) ...............................................................7, 8

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| KNOLL, INC., | Civil Action No. 12-CIV-00921 (AKH) |
| *Plaintiff,* | ECF CASE |
| v. | |
| REGENCY SEATING, INC. and JOHN SUMMERVILLE, | |
| *Defendants.* | |

MEMORANDUM OF LAW IN SUPPORT OF
PLAINTIFF'S REQUEST FOR RECONSIDERATION
OF THE COURT'S RULING AT THE HEARING OF MAY 23, 2013

Plaintiff Knoll, Inc. ("Knoll") respectfully requests reconsideration of the Court's ruling at the hearing of May 23, 2013 (the "Hearing"), that defendants made a prima facie case of fraud on the United States Patent and Trademark Office ("USPTO").

At the Hearing, defendants argued that they were entitled to discovery of attorney client privileged communications based on the crime fraud exception, contending that a statement that Knoll made in its various trademark applications to register the Barcelona Collection of furniture defrauded the USPTO because Knoll had actual knowledge that third parties were selling similar products at the time the statement was made. Defendants claimed that since Knoll's use was "not exclusive," Knoll had an affirmative obligation to disclose these third party users to the USPTO in the context of making its statement.

In reading the Hearing transcript, it is far from clear whether the Court understood the distinctiveness claim and what it entailed. As the Court may be aware, product configuration

marks such as the Barcelona furniture registered by Knoll must be deemed "distinctive" before

they can be registered on the Principal Register.   Distinctiveness can be established in a number

of ways: the USPTO will consider all evidence including submissions of declarations by

informed persons as to the recognition and secondary meaning achieved by the marks.   The

applicant can also "claim" distinctiveness by entering a statement in the application that its use

of the mark has been "substantially exclusive and continuous" in the five year period before the

statement is made.[1]   If such a claim is entered in the record, the USPTO may accept the claim as

"prima facie evidence" of distinctiveness.[2] The USPTO can rely on the claim of distinctiveness

alone in accepting the mark for registration or it can request further evidence of distinctiveness

such as by submissions of declarations if none were submitted at the time of the filing.   At

filing, Knoll established distinctiveness by both entering a claim on the record of the applications

that it had "substantially exclusive" use of the marks, and by submitting the Declarations of Carl

Magnusson, Knoll's then Senior Vice President and Director of Design, and of Terrence Reilly,

who, at that time, was the Philip Johnson Chief Curator of Architecture and Design of the

Museum of Modern Art in New York, containing sworn statements and evidence pertaining to

the distinctiveness of the marks.

A. Knoll's Allegedly Fraudulent Statement was Misstated at the Hearing

At the Hearing, the Court misunderstood whether Knoll had claimed that it made

"substantially exclusive" use of a mark or had claimed that its use was "substantial *and*

---

1   There is no claim by defendants that the use made by Knoll was not continuous in the five year window before
    the claim of distinctiveness was made, therefore this discussion will not focus on this aspect of the standard.

2   Section 2(f) of the Lanham Act, 15 U.S.C. §1052 (f) explains in pertinent part that:
        The Director [of the USPTO] may accept as prima facie evidence that the mark has become distinctive, as
        used on or in connection with the applicant's goods in commerce, proof of substantially exclusive and
        continuous use thereof as a mark by the applicant in commerce for the five years before the date on which
        the claim of distinctiveness is made (emphasis added)

exclusive."   Counsel for defendants generated the confusion and misinformed the Court of the

proper alleged misstatement.   At Hearing Transcript (Docket No. 42) Page ("Tr.") 6 - 7 the

following discussion took place:

```
18          THE COURT:  What is the fraud?
19          MS. MARSH:  The fraud is the applications submitted to
20   the Patent and Trademark Office that stated that they had
21   substantially and exclusive use of a design, several designs.
22             THE COURT:  What is the specific statement?  Was it a
23   misstatement, a purposefully incorrect statement?
24          MS. MARSH:  Correct.
25          THE COURT:  What is the purposefully incorrect
```

```
1    statement?
2          MS. MARSH:  That they had substantially and exclusive
3    use of the design applied for.
4             THE COURT:  Of the design?  And what was the design?
5          MS. MARSH:  Furniture.
6          THE COURT:  Was there a specific name?
7          MS. MARSH:  Barcelona.  It's about a couch, a chair,
8    different versions.
9             THE COURT:  They had substantial and exclusive use of
10   the Barcelona design?
11         MS. MARSH:  Correct.
12            THE COURT:  And you're saying it's not a substantial
13   and exclusive use?
14         MS. MARSH:  No, your Honor.  They had full knowledge
15   that for more than 20 years there were numerous parties openly
16   and notoriously selling the same -- very same-looking
17   furniture.
```

And at Tr. 10:

```
4             THE COURT:  And you're saying that they shouldn't have
5    gotten the registration because they knew that there was a
6    nonexclusive use involved, which was significant and much more
7    than not inconsequential, and so their use of Barcelona was not
8    exclusive.
9          MS. MARSH:  Correct, your Honor.  And that would be
10   interesting if it were just one, but there are a number of
11   parties, more than 10, perhaps even 20.
```

Indeed, the hearing transcript is replete with instances where the allegedly fraudulent statement

made by Knoll is characterized as having been "substantial and exclusive," rather than

"substantially exclusive."[3]   When Knoll's counsel attempted to clarify the language and explain the meaning of "substantially exclusive," the Court had concluded that the use was not exclusive due to the third party uses, and appeared to dismiss the importance of the term "substantially." At Tr. 20 the Court asks:

```
2           THE COURT:  So what do I focus on then, substantial?
3    It seems to me Palazzetti was using the Mies van der Rohe
4    design --
5              …
6           THE COURT:  -- at the time that Knoll, through its
7    officers, was saying that only Knoll had exclusive use of that
8    design, and it wasn't exclusive.
```

On a few occasions, the Court and counsel did appear to properly recite the wording "substantially exclusive,"[4] but these instances were over-shadowed by the forgone assumption that any third party use was inconsistent with the (mistaken) understanding that the claim required "exclusive use."

Despite the arguments at the Hearing, there can be no factual dispute that Knoll's

---

3   See Tr 7, lines 12-13: "The Court: And you're saying it's not a 'substantial and exclusive use'".

   Tr 19, lines 21-22 The Court: Which was claimed by Knoll as exclusive to it--.

   Tr 20, lines 6 -8. The Court: -- at the time that Knoll, through its officers, was saying that only Knoll had exclusive use of that design, and it wasn't exclusive.

   Tr 25, lines 8-10. The Court: And that phrase "substantial, exclusive, and continuous use" is what we're talking about.

   Tr 26, lines 3-5. The Court: So what leaps to mind immediately is that substantial, exclusive, and continuous use is considered synonymous, at least in one respect, with authorization."

   Tr 27, lines 2-4. The Court: That may be, but he doesn't have exclusive rights. He doesn't have exclusive use. It doesn't say exclusive rights, it says exclusive use.

   Tr 32, lines 16-21. The Court: …The question is, when someone says we have substantial and exclusive use and know that there are others who have a not insignificant copy, authorized or unauthorized, that they've been selling for a number of years, whether that is inconsistent with the application and representations, and I think it is.

   Tr 35, lines 21-25.  The Court: The question is whether one can say, "I have substantial, exclusive, and continuous use," knowing that someone else, without authority, is making copies and has been doing so for some time."

   Tr 36, lines 10-14. The Court: One can have a trademark just by establishing a use before anyone else, establishing it in commerce, but to obtain a registration on the Principal Register, one has to tell the Patent Office that "my use is substantial, exclusive, and continuous."

4   See Tr 18, lines 9 -11: "The Court: It's hearsay as far as I' m concerned.  The statement is that Knoll had substantially exclusive use of the design that was labeled the Barcelona design." At line 13: " The Court:  And Ms. Marsh has asked me to look at some specifics which would suggest to me that the use by others, if known- - suggests that Knoll's use was not substantially exclusive. If that's true, that's a fraud."

statement in the applications is that it had "substantially exclusive" and continuous use, not exclusive use.   The application language is in the record. See Declaration of Natasha Sardesai-Grant, Docket No. 29, Exhibit B.   Knoll's claim of substantially exclusive use simply tracks the language of Section 1052(f) of the Lanham Act which requires a claim of use that is no more than "substantially exclusive" and continuous.

B.   Substantially Exclusive is not Exclusive

There is a world of difference between "substantial and exclusive" and "substantially exclusive."   The adjective "substantially" appears in the statute to recognize that exclusivity is not necessary and may not be realistic in certain circumstances, such as in circumstances of existing infringing uses or when the third party use is inconsequential.   In those instances, a claim of distinctiveness is not precluded and a disclosure of the third party users is not mandated. (See discussion *infra*.)   The Court, however, erroneously concluded that defendants' showing of third party uses *ipso facto* meant that the use by Knoll could not have been exclusive (or even "substantially exclusive" if that was indeed the standard the Court followed). Upon learning of third party uses, the Court axiomatically assumed that Knoll's statement that it had substantially exclusive use could not have been made in good faith:

```
 2          THE COURT:  If I've been saying that I have
 3     substantially exclusive use, knowing that others also have use,
 4     that's not in good faith.
 5          MR. GOTTLIEB:  Right.
 6          THE COURT:  It's not in good faith.
 7          MR. GOTTLIEB:  That knowing that others have use, your
 8     Honor, is not inconsistent with substantial and continuous use.
 9          THE COURT:  I think it is.  I think it is.  And I
10     think when you make a flat statement like that without saying
11     that others who have used it don't have the authorization or
12     are making copies, they're infringing and we'll take care of
13     them once we get our name in the register, no.  I think there
14     is an inconsistency here which shows a knowing inconsistency,
15     and, at least prima facie, an attempt to deceive.
```

See Tr. 33.

Indeed, the Court ultimately based its ruling on this confusion and assumptions as to the role that "authorization" played in the equation, rather than on established principles of trademark law.   At Tr. 26, the Court stated: ....

```
 3         So what leaps to mind immediately is that substantial,
 4    exclusive, and continuous use is considered synonymous, at
 5    least in one respect, with authorization.  So if in Magnusson's
 6    mind Palazzetti was making substantial use of the same design
 7    but did not have, in Mr. Magnusson's view, authorization, then
 8    Mr. Magnusson could safely say that Knoll's use was exclusive,
 9    and I wonder what the standard is.  If one were to eliminate
10    the factor of authorization, how would it be?
11         MR. GOTTLIEB:  Well, I think the answer to that, your
12    Honor, is, in part, who was the first user of the mark?
13         THE COURT:  No.  Who has the exclusive use.
14         MR. GOTTLIEB:  So your Honor --
15         THE COURT:  I don't know the law as well as you do,
16    Mr. Gottlieb, and I would like to take instruction from you as
17    an officer of the court which I can rely on as much as counsel
18    for your client.  But it seems to me that if someone has had
19    long use, not having had an original authorization, that would
20    be inconsistent with saying that someone else has substantially
21    exclusive use.
```

C.   Case law Interpretation of "Substantially Exclusive" Supports Knoll's Claim

Knoll's claim of substantially exclusive use was entirely proper and, in making that claim, Knoll was not under any obligation to disclose the third party uses because each of those third party uses – no matter how many uses and the extent of use – was unauthorized infringing use.[5]   Even long use with no original authorization is an infringing use, no matter what equitable defenses might be raised by the third parties. Knoll's position is supported in the pertinent case law.

The Federal Circuit Court of Appeals in *L.D. Kichler Co. v. Davoil, Inc.*, 192 F.3d 1349,

---

5   Mies van der Rohe granted Knoll's predecessor a license to manufacture furniture in the Barcelona Collection in 1953 and by a 1965 agreement Mies assigned all of his rights in the USA and elsewhere in the Barcelona Collection to Knoll's predecessor.   Knoll and its predecessors have continuously sold the pieces in the Barcelona collection since before the time of the 1965 agreement. Knoll offered items for sale under the "BARCELONA" name from at least 1954. In that 1965 agreement, Mies represented that he had not authorized any other company in the world to make or sell any of the items in the Barcelona Collection.   See Knoll's Brief in Opposition (Docket No. 32) at page 2.

1352, 52 USPQ 2d 1307, 1309 (Fed. Cir. 1999) discussed what constitutes "substantially exclusive" in the context of known third party uses. There, like here, the applicant claimed distinctiveness and made a claim of "substantially exclusive and continuous" use of the mark. The district court there had held that the mark was procured by fraud on the USPTO because at the time the statement was made, applicant should have disclosed that there were at least three other companies that sold similar back plates to those sold by applicant.  Having concluded that, the district court made no findings as to the nature of the uses.  The Federal Circuit reversed summary judgment and explained that the claim of use does not have to be exclusive; it may be "substantially exclusive:"

> Section 2(f) declares that prima facie evidence of distinctiveness includes "proof of *substantially* exclusive and continuous use" of a mark for five years. 15 U.S.C.A. § 1052(f) (West Supp. 1999) (emphasis added). As the Trademark Manual of Examining Procedure, § 1212.05(b), recognizes: "The five years of use does not have to be exclusive, but may be 'substantially' exclusive. This makes allowance for use by others which may be inconsequential or infringing and which therefore does not necessarily invalidate the applicant's claim." *See generally In re International Flavors & Fragrances, Inc.*, 183 F.3d 1361, 51 U.S.P.Q.2D (BNA) 1513, 1516 (Fed. Cir. 1999) ("Although the Manual does not have the force of law, it 'sets forth the guidelines and procedures followed by the examining attorneys at the PTO.'" (quoting *West Fla. Seafood, Inc. v. Jet Restaurants, Inc.*, 31 F.3d 1122, 1127 n.8, 31 U.S.P.Q.2D (BNA) 1660, 1664 n.8 (Fed. Cir. 1994))). The district court, therefore, erred in suggesting that *any* use by others is sufficient to preclude an applicant's declaration of "substantially exclusive" use. *Cf. Yamaha Int'l Corp. v. Hoshino Gakki Co.*, 840 F.2d 1572, 1583, 6 U.S.P.Q.2D (BNA) 1001, 1010 (Fed. Cir. 1988) (affirming board's rejection of section 2(f) opposition, in spite of evidence that four other companies made similar products prior to registration). Consequently, the grant of summary judgment was improper because there is a genuine issue of fact regarding the extent of the other companies' use--i.e., whether it was inconsequential or infringing.

*Id.* at 1306-7.  The Federal Circuit also suggested the possibility that the use of an applicant was "neither first nor exclusive," as had been the case in *Levi Strauss.*" *Id.* at 1352.  (This point is significant because here, in contrast, there is no claim by defendants than any of the third party use is prior to the establishment of Knoll's use and rights.  (See Fn 5.))  The Federal Circuit

7

remanded the case to the district court to consider "whether there existed significant prior use by others, and if so, whether Kichler knowingly submitted a false declaration with intent to deceive."[6]  *Id*. at 1308.

Defendants only made a showing of third party uses and suggested, without authority, that laches and failure to stop infringers gave the infringers a claim of rights. See Infra. Fn.10. No third party, nor defendants here, has claimed that it predates Mies' or Knoll's rights.  Here, there is simply no showing that any third party use was prior to Knoll's use or could defeat Knoll's right of priority and thus ownership of the mark.  All the third party uses here were infringing uses and Knoll, as a matter of law, did not have an obligation to disclose these infringing uses. Counsel for defendants merely speculated that some of the third parties might have equitable defenses such as a laches defense to Knoll's infringement claim, rights which in any case might even be "personal" to those parties.  As such, this fact would not elevate the nature of the third party use to one that should have been disclosed to the USPTO as "authorized."[7]

---

6  A jury verdict at the district court ultimately found for defendant.

7  The Trademark Office does not consider prior use by others inconsistent with a statement of "substantially exclusive" use. The Trademark Manual for Examining Procedure (TMEP) used by all trademark Examiners in the PTO states:

    1212.05(b)  "Substantially Exclusive and Continuous"

    The five years of use does not have to be exclusive, but may be "substantially" exclusive. This makes allowance for use by others that may be inconsequential or infringing, which does not necessarily invalidate the applicant's claim.

a. Knoll Had No Legal Duty to Disclose Unauthorized or Infringing Users

Cases generally addressing the declaration made by applicants in a trademark application are informative on the duty to disclose unauthorized or infringing users.[8]   As then Chief Judge Platt explained in *Dial-A-Mattress Operating Corp. v. Mattress Madness Inc.*, 841 F.Supp. 1339, 1354 (E.D.N.Y. 1994) when speaking about the general declaration that supports a trademark filing, addressing both the obligation of an applicant and the requisite scienter:

> Plaintiff's failure to disclose defendants' concurrent use of the previous Dial-A-Mattress name simply may not support a fraud claim. A trademark applicant must disclose only those users who are known to have a right to use the same or a related mark. See 37 C.F.R. 2.33(b)(1). The applicant has no obligation, however, to disclose known users believed to be infringing the applicant's rights in the mark. *Haviland & Co. v. Johann Haviland China Corp., 269 F. Supp. 928, 936-37 (S.D.N.Y. 1967).* Plaintiff has steadfastly maintained that neither Graber nor anyone else has a right to use the previous Dial-A-Mattress name. Consequently, there was no "knowingly false" statement such as is required to support a charge of fraud and defendants are unlikely to succeed in their efforts to cancel plaintiff's registration on this ground. *Ambercrombie & Fitch, 537 F.2d at 14.* Therefore, defendants have failed to make out a prima facie case of fraud sufficient to impugn plaintiff's federal registration.

(Emphasis added).   So too here, no prima facie claim of fraud has been proven.   Defendants only offered "evidence" of fraud is Knoll's alleged failure to disclose strictly unauthorized and infringing third party uses, and that alone does not amount to fraud as Knoll had no duty, as a matter of law, to disclose those uses to the USPTO when filing its application.[9]   There is no

---

8   An applicant's oath requires the following statement:
   that to the best of my knowledge and belief, no other person, firm, corporation or association has the right to use said mark, in commerce, either in the identical form or in such near resemblance thereto as may be likely, when applied to the goods and/or services of such other person, firm, corporation or association, to cause confusion, or to cause mistake, or to deceive; that all statements made herein of my own knowledge are true and that all statements made on information and belief are believed to be true.

9   See also a similar conclusion in *Sovereign Military Hospitaller Order of Saint John of Jerusalem of Rhodes and of Malta v. The Florida Priory of the Knights Hospitallers of the Sovereign Order of Saint John of Jerusalem, Knights of Malta, the Ecumenical Order*, 702 F.3d 1279, 1291 (11th Cir. 2012):

> To prove the fraud claim based on misrepresentations in the declaration oath, The Florida Priory was required to establish that Pace [the signatory] "was aware other organizations were using the…mark (either in an identical form or a near resemblance) and 'knew or believed' those other

reason that the standard followed with respect to the basic trademark oath should change in the

context of an applicant's distinctiveness claim of "substantially exclusive use." Defendants

have not offered any legal authority to support their assertion that non-authorized third party

users should have been disclosed in the context of claiming distinctiveness, and thus, the Court's

assumption that non-authorized third party users had to be disclosed is not only not supported by

legal authority, but is contrary to established law in the trademark oath context. The Federal

Circuit in *Rosso & Mastracco. Inc. v. Giant Food, Inc.*, 720 F.2d 1263, 1266 (Fed. Cir. 1983)

also clarified that the registration applicant has no obligation to report other users and in the

absence of clearly established rights in another user. The Federal Circuit Court there explained

that "clearly established rights" are conflicting rights established by "a court decree, by the terms

of a settlement agreement, or by a [trademark] registration." Contrary to defendants' legally

unsupported position at the Hearing,[10] a third party with a potential laches defense simply does

---

organizations had a right to use the mark." The declarant focused text of the application oath
requires the signatory's good faith subjective belief in the truth of its contents.

If the declarant subjectively believes the applicant has a superior right to use the mark, there is no
fraud, even if the declarant was mistaken...The Florida Priory failed to proffer any evidence to
show that Pace (or Plaintiff Order) believed that The Ecumenical Order had a right to use the
subjected-to marks in commerce.   This is fatal to the claim of fraud (internal citations omitted).

And see *Quality Service Group v. LJMR Corp.*, 831 F. Supp. 2d 705, 711 (S.D.N.Y. 2011) (declining to cancel
registration based on allegedly fraudulent failure to disclose third parties using the name "Blue Martini" because
"the existence of other bars bearing the name 'Blue Martini' does not militate against the granting of a word
mark, so long as the party seeking a word mark can demonstrate substantial exclusivity."); *eCash Technologies,
Inc v. Guagliardo*, 210 F.Supp.2d 1138 (C.D. Cal. 2001)  ("...the Federal Circuit has indicated that ordinarily a
senior user need not identify junior users in the oath underlying an application for registration. Only in the rare
circumstance that another user of the same mark's rights are "clearly established" must this use be disclosed).

10   See discussion between the Court and defendants' counsel at Tr. 35 and 36:
```
21          THE COURT: Don't talk about specific cases.  The
22   question is whether one can say, "I have substantial,
23   exclusive, and continuous use," knowing that someone else,
24   without authority, is making copies and has been doing so for
25   some time.
1           MS. MARSH: Yes, your Honor.  The law may talk about
2    one third party, but here we have multiple third parties,
3    multiple third parties, and that is an issue that I think, if
4    you go back to Mr. Magnusson's --
5           THE COURT: Let's suppose they're all copies.
6           MS. MARSH: They can't all be copies.  They're open
```

not hold "a clearly established right," which "right" would obligate an applicant to disclose said

third party to the USPTO.   Nor does the alleged failure to stop an infringer by non-action give

that infringer "clearly established rights," which an applicant would have to disclose to the

USPTO when making its distinctiveness claim.   3 *McCarthy* On Trademark & Unfair

Competition, § 31:75 perhaps explains an applicant's duty most clearly:

> The Trademark Board has held that when a party claims that the oath or declaration in
> another's application for registration was signed fraudulently in that there was
> another legitimate use of the mark at the time of the signing, the party must allege
> particular facts which, if proven, would establish that:
>    (1) There was in fact another use of the same or a confusingly similar mark at the
>        time the oath was signed:
>    (2) The other user had legal rights superior to applicant's rights:
>    (3) Applicant knew that the other user had rights in the mark superior to
>        applicant's, and either believed that a likelihood of confusion would result
>        from applicant's use of the mark or had no reasonable basis for believing
>        otherwise; and
>    (4) Applicant, in failing to disclose these facts to the Patent and Trademark
>        Office, intended to procure a registration to which applicant was not entitled.

Clearly the third party users that defendants claim should have been disclosed at the time Knoll

filed its application did not have legal rights superior to Knoll's rights and on that ground alone

no prima face claim of fraud has been made.   McCarthy continues at § 31:75:

> There is nothing in the oath or the statute which requires applicant to disclose
> anyone who in fact may be using the mark, but does not, in the applicant's belief,
> possess the legal rights to use.   The oath is not a guarantee that no other firm has
> a legal right to use the mark.   Simply because after litigation, another may
> succeed in proving in the PTO or in court that it does have a legal right to use,

---

```
 7      and notoriously -- there's a laches issue here.
 8           THE COURT:  The obtaining of a right to register one's
 9      trademark on the Principal Register is a major step in
10      enforcing one's rights.  One can have a trademark just by
11      establishing a use before anyone else, establishing it in
12      commerce, but to obtain a registration on the Principal
13      Register, one has to tell the Patent Office that "my use is
14      substantial, exclusive, and continuous."  And if someone else
15      is using that same mark, let us say, without having authority
16      from somebody else, it may ultimately be defeated, but it has
17      to be told I think to the Patent Office, because if you don't
18      say something you know, which makes that which you say false
19      and misleading, there's an obligation to say it.
20           MS. MARSH:  Correct.  Failure to stop an infringer
21      means that that infringer has rights.  You've abandoned your
22      mark by failing to enforce it.  But let me just --
```

does not mean that the signer of the oath committed fraud and was a liar. The signer of an oath should not be put into the position of a fortune teller as to what the courts will hold in the future as to the trademark rights of others.

In sum, none of the third parties had a known right to use the marks, and none had prior and superior rights in the marks as compared to Knoll. Only Knoll had the right to manufacture and sell the Barcelona Collection furniture, a right and use that began as far back as 1953, well before the 20 or so years that defendants' counsel alleged that there had been third party use. A mere defense to infringement does not afford an infringer an un-adjudicated right in the mark. There can be no showing that Knoll made a false representation in its applications since as a matter of law a disclosure of infringing users – no matter their alleged laches and failure to take action defenses -- was not required.

D. Defendants Have Simply Not Made a Prima Facie Case of Fraud

The elements of fraud in the trademark application context were set out clearly out in *Dial-A-Mattress Operating Corp. v. Mattress Madness Inc.*, 841 F.Supp. 1339, 1353 (E.D.N.Y. 1994):

(1) A false representation regarding a material fact.
(2) Knowledge or belief that the representation is false ("scienter").
(3) An intention to induce the listener to act or refrain from acting in reliance upon the misrepresentation.
(4) Reasonable reliance upon the misrepresentation.
(5) Damage proximately resulting from such reliance.

*Id.* at 1354. Defendants here have not established the first part of the first element of the test: that a false representation was made, that is, they have not shown that Knoll's statement of substantially exclusive use was indeed false, they have not established that it was material, they have not established that Knoll had the requisite knowledge or belief that the representation was false,[11] they have not established that Knoll intended to have the USPTO rely on that statement

---

11  Although there is no duty to disclose infringing users to the USPTO, the declaration of Terrence Reilly, design

12

in issuing the registrations, they have not established that the USPTO relied on that statement rather than on the voluminous evidence of secondary meaning that also established distinctiveness submitted by way of declarations, and they have not come forward with law that supports their suggestion that infringing uses should have been affirmatively disclosed. Defendants did not offer even the slightest evidence to support any of the elements necessary to make out a fraud claim, and certainly did not do so by a showing of clear and convincing evidence, which is the required evidentiary standard, nor by any lower evidentiary standard sufficient to vitiate the attorney client privilege.  See *L.D. Kichler*, Id. at 1307. (Standard is clear and convincing).

This Court can take guidance from the Northern District of California in *Alphaville Designs, Inc. v Knoll, Inc.*, 627 F. Supp.2d 1121, 1131 (N.D. Cal. 2009), where the district court considered these very issues: whether Knoll defrauded the USPTO when it claimed that its use was substantially exclusive and without disclosure of infringing third parties. There, Alphaville Designs sought to cancel Knoll's Barcelona registrations on the same unfounded claim that fraud had been committed on the USPTO for failure to disclose third parties who were selling chairs.  In her decision, Judge Patel explained clearly and concisely:

> In trademark law, 'substantially exclusive' use does not require absolutely exclusive use on the part of the applicant. See L.D. Kichler Co. v. Davoil, Inc., 192 F.3d 1349, 1352 (Fed. Cir. 1999). As a result, the mere use of a mark by a third party may not be sufficient to defeat a claim of substantially exclusive use.  Furthermore, the trademark applicant need only disclose to the USPTO those users it *knows* to have superior or clearly established rights in the proposed mark.   See Hana Fin., Inc. v. Hana Bank, 500 F. Supp. 2d 1228, 1235 (C.D. Cal. 2007). 'The statement of an applicant that no other person 'to the best of his knowledge' has the right to use the mark does not require the applicant to

---

curator at MOMA, submitted when the applications were filed, actually attached an article from *Newsday* which referred to knockoffs being made by Palazetti and others. See Bates Nos. KRS00000741-KRS00000744, which document was provided to the Court at the Hearing. This demonstrates that Knoll was not hiding anything from the USPTO in making its showing of distinctiveness by making its "substantially exclusive use" claim and by submission of declarations with other evidence of distinctiveness.

disclose those persons whom he may have heard are using the mark *if he feels that the rights of such others are not superior to his*.' (9th Cir. 2006), quoting Yocum v. Covington, 216 U.S.P.Q. 210, 216-17 (T.T.A.B. 1982)(emphasis in original).

Here, not only have defendants not offered any evidence that the third party users they referred to were not infringing users, defendants have not offered any reasons why Knoll did not honestly believe that each and every one of them were infringing users; that is the fraud standard.

If the Court is nevertheless convinced that a false representation was made in failing to disclose infringing users in the context of the claim of distinctiveness, then it should find that since there was absolutely no proffered evidence of scienter or intent to defraud the USPTO when Knoll claimed that it was a substantially exclusive user[12], this particularly in light of the fact that third party infringers were in fact disclosed in the declaration of Mr. Reilly, then no prima facie case was made on that ground.  The statute and implementing oaths require the statement of *beliefs* about exclusive rights, not their actual possession. Defendants have produced nothing to impugn Knoll's beliefs.

---

12  There is not a scintilla of evidence that Mr. Carl Magnusson, the person through which Knoll acted at the USPTO, an architect and expert on Mies van der Rohe, had anything other than an honest belief that the statement in the applications that the use by applicant, Knoll, was "substantially exclusive" was a true statement. In fact, in a declaration that Mr. Magnusson submitted in the Alphaville case, See Declaration of Marc P. Misthal, Exhibit 3, Docket No. 33, Mr. Magnusson reviewed his statement in the application that the Knoll's usage was "substantially exclusive" and there stated that that statement was true when it was made and it is true as of the date of his declaration.

14

Conclusion

On reconsideration, the Court should reverse its finding that a prima facie case of fraud on the USPTO was made by defendants; and deny defendants' request that the attorney client be vitiated based on the crime fraud exception and that privileged documents be subject to disclosure.

Dated: New York, New York
   June 6, 2013

Respectfully submitted,

GOTTLIEB, RACKMAN & REISMAN, P.C.

By: _____
George Gottlieb (GG-5761)
ggottlieb@grr.com
Marc P. Misthal (MM-6636)
mmisthal@grr.com
270 Madison Avenue, 8th Floor
New York, New York 10016
(212) 684-3900 Tel.
(212) 684-3999 Fax

Counsel for Knoll Inc.

15